E. A. SMYTH, 3RD, LEWIS D. BLAKE AND JOHN A. HUDGENS, EXECUTORS OF THE LAST WILL AND TESTAMENT OF ELLISON A. SMYTH, DECEASED; E. A. SMYTH, 3RD, LEWIS D. BLAKE, JOHN A. HUDGENS AND ELLISON S. McKISSICK, AS TRUSTEES; E. A. SMYTH, 3RD, AND ELLISON S. McKISSICK, INDIVIDUALLY, v. MARGARET S. McKISSICK, ANNIE P. BLAKE, SARAH S. HUDGENS, MARY HUTCHINSON SMYTH, MARY S. McKAY, JAMES A. SMYTH, JR., JULIA S. REEVES, L. PIERCE SMYTH, MOULTRIE H. SMYTH, LEWIS B. SMYTH, MRS. EDWARD M. ARMFIELD, ELLISON S. BLAKE, ANNIE PIERCE BLAKE HAYNIE, EDWARD BLAKE, JULIUS A. BLAKE, SADIE BLAKE ROGERS, LEWIS D. BLAKE, JR., JOHN ALLISON HUDGENS, JR., ELLISON SMYTH HUDGENS, SARAH S. HUDGENS, JR., THOMAS ALLISON HUDGENS, ELLA HUDGENS CAMENZIND; DAVID HUTCHINSON SMYTH, A MINOR, DEFENDED HEREIN BY HIS GUARDIAN AD LITEM; MARGARET S. McKISSICK, II, A. FOSTER McKISSICK, ELLISON S. McKISSICK, JR., MARY C. BLAKE, WILLIAM R. HAYNIE, LEWIS BLAKE HAYNIE, KATHRYN ALLIE BLAKE, JULIUS A. BLAKE, JR., JULIA VARENA BLAKE, ANN LEWIS BLAKE, ALICE BLAKE, ROY A. CHENEY, JR., LEWIS BLAKE CHENEY, JULIA ANN HUDGENS, WILLIAM McKAY, MARY HUTCHINSON McKAY, ADGER SMYTH McKAY, LAWRENCE HAZELHURST McKAY, ELLISON ADGER SMYTH, V, ROSS JORDAN SMYTH, JAMES McGREGOR SMYTH, HELEN BOND SMYTH, JAMES ADGER SMYTH, 3RD, ALL MINORS, AND ANY AND ALL PERSONS NOW IN BEING AND UNBORN PERSONS WHO ARE OR MAY UPON ANY CONTINGENCY BECOME BENEFICIARIES UNDER THE TRUSTS AND WILL OF ELLISON A. SMYTH, DECEASED, DEFENDED HEREIN BY THEIR GUARDIAN AD LITEM; AND FRANCES THROWER SMYTH.

(Filed 17 March, 1943.)

**1. Trusts § 8a: Wills § 31—**

Where trust indentures conveyed personalty to trustees, in trust for children and grandchildren, with directions as to the distribution of the income and principal thereof, and a devise of additional funds by will contemplated the sale of realty and a similar distribution of the income and *corpus* thus devised, the ordinary rules of descent and distribution and those governing the devolution of estates are applicable to the instruments under consideration, to determine the rights of those who are to participate in accordance with the intent of the trustor.

**2. Same—**

In a conveyance or devise principal and income go together, in the absence of a clear intention to separate the income from the principal.

**3. Trusts § 8b: Wills § 33c—**

Beneficiaries of trust property, who are *sui juris* and whose rights are vested, may dispose of their equitable interests in the trust; but here the children of trustor's grandchildren take by purchase and not by descent, and the interests of the grandchildren are defeasible and upon their dying, during the life of the first takers, leaving children, who, in that event, take

the part to which their parents would have been entitled, if living, and, upon the death of a grandchild during the trust period, only those coming within the description, or those then entitled, are capable of answering the roll call for annual or final distribution.

**4. Adoption § 13—**

In a trust agreement, describing those who are to become beneficiaries therein, the use of the word "child," to designate the one to take upon the death of a grandson of the maker, is not comprehensive enough to include a child adopted by such grandson several years after the agreement became effective.

**5. Same: Wills § 41½—**

Where a trust is created by will for a son, with provision that upon the death of the son the principal of the trust shall be paid to his child or children, the word "child" includes a child adopted some time before the death of the testator and with his knowledge and approval.

SCHENCK, J., took no part in the consideration or decision of this case.

APPEAL from *Alley, J.,* at Chambers, January, 1943. From HENDERSON.

This was a suit by the executors and trustees under the will and trust indentures of Ellison A. Smyth, deceased, for construction of these instruments and advice as to the proper distribution of the income and *corpus* of the trusts thereby created, and for an adjudication of the rights and interests of the various beneficiaries. All the parties now living and those unborn who might by any possibility have an interest in the estate, have been made parties and are represented by counsel. The case was presented below upon facts agreed, the pertinent portions of which may be stated as follows:

Ellison A. Smyth, the testator and trustor, in 1932, executed an irrevocable trust agreement or indenture whereby he established a trust fund consisting of stocks, bonds and notes of the value of more than a million dollars, and designated himself as trustee, and the plaintiffs as successor trustees. To these he conveyed the described property in trust to hold, invest and reinvest, and receive the revenues, incomes and profits arising therefrom. The trustees were directed to divide the net income derived from this property into four parts and distribute the same annually as follows:

"a. The first part shall be ten (10%) per cent thereof, and shall be paid to Margaret S. McKissick, now residing at Greenville, South Carolina, for and during the term of her natural life, and upon and after her death this share of the income from this trust shall be distributed among her children in equal shares.

"b. The second part shall be thirty-five (35%) per cent thereof, of which two-thirds shall be equally divided among the children of James

Adger Smyth, deceased, lately residing in Henderson County, North Carolina, and the remaining one-third thereof shall be paid to Mary Hutchinson Smyth, now residing in Henderson County, North Carolina, widow of James Adger Smyth, during her lifetime, and so long as she does not remarry, provided that upon her marriage during her lifetime, and/or upon her death unremarried, the one-third herein provided for her shall be distributed equally among the children of the said James Adger Smyth, deceased.

"c. The third part shall be twenty-five (25%) per cent thereof, and shall be paid to Annie P. Blake, now residing at Belton, South Carolina, for and during the term of her natural life, and after her death this share shall be distributed among her children in equal shares.

"d. The fourth part thereof shall be thirty (30%) per cent thereof, and shall be paid to Sarah S. Hudgens, now residing in Henderson County, North Carolina, for and during the term of her natural life, and after her death this share of the income from this trust shall be distributed among her children in equal shares.

"e. The child or children of any deceased child of Margaret S. McKissick, James Adger Smyth (deceased), Annie P. Blake, and Sarah S. Hudgens, shall equally take the part to which his or her parent would have been entitled, if living.

"f. If, for any cause whatever, there should be a failure of persons within any of the respective classes designated in sub-sections a, b, c and d, next foregoing, for the division of the income from this trust, then the share designated for such extinct class shall be distributed among the surviving classes, equally."

The trust indenture also contained the following provision: "Upon the death of the survivor among Margaret S. McKissick, Annie P. Blake, and Sarah S. Hudgens, and upon the death or re-marriage of Mary Hutchinson Smyth, but not in any event before the year 1941, then and as soon thereafter as practicable, there shall be a final distribution of the *corpus* of this trust, by dividing the same into four parts and distributing same as follows:" The method for the distribution of the *corpus* of the trust was expressed in the same language in which the trustor had previously directed the annual income, that is, to the same classes and in the same proportions, and identified by the same letters, a, b, c and d, together with the limitations in paragraphs "e" and "f."

In 1936 Ellison A. Smyth executed another trust indenture identical in form and language with the first, the only difference being the addition to the trust of certain life insurance policies of the face value of $170,000, with the same directions for the distribution of annual income and *corpus* to the same four groups of beneficiaries, again designated by letters a, b, c and d, with the same limitations "e" and "f."

In 1934 Ellison A. Smyth executed his will, naming the plaintiffs as executors thereof and trustees of an additional trust set up therein. By the will all the remainder of the decedent's estate, real and personal, after the payment of certain legacies, was devised to the plaintiffs as trustees to hold, invest and reinvest, and to distribute annually the income derived therefrom to the same beneficiaries who were designated in the identical language set out in the trust indentures, that is, the executors and trustees were directed to divide the income into four parts and distribute annually to the four groups, using the same words and same method of designation by the letters a, b, c and d, with same limitations under "e" and "f," as hereinbefore set out. The final distribution of the fund was directed to be made "upon the death of all" the testator's children and the death or remarriage of his daughter-in-law, and not earlier than 1944. "Then" the trustees were to distribute the *corpus* of the estate by dividing it into four parts and distributing to the same four groups, designated and described in the same language, and by the same letters, according to the same percentages. The testator explained that the apparent discrimination in the distribution of his estate was not due to discrimination in affection, but was based upon his estimate of their several needs and the objects of their care, maintenance and education.

Thomas Smyth, one of the children of James Adger Smyth, and grandson of the testator, Ellison A. Smyth, was married in November, 1932, to Frances Thrower Smyth. Having no children born to them, in 1938, they adopted for life the infant, David Hutchinson Smyth, who was not related by blood to any of the parties herein. The adoption proceedings were had in the State of Illinois and were in all respects regular, and the final judgment of the proper court of that state, decreeing the adoption, was valid and binding. Thomas Smyth died 2 April, 1941, leaving a last will and testament by which he disposed of all his property to his widow Frances Thrower Smyth.

On 3 August, 1942, Ellison A. Smyth, the testator and trustor, died, leaving the following children and grandchildren:

(a) Margaret S. McKissick, a daughter, who has one child, the plaintiff, Ellison S. McKissick.

(b) Seven living children of his deceased son, James Adger Smyth, and the adopted child of the deceased Thomas Smyth.

(c) Annie P. Blake, a daughter, who had seven children, all now living except one, Julia Blake Cheney, who died before the testator, leaving two minor children.

(d) Sarah S. Hudgens, a daughter, who has five children, all living.

It was admitted that Ellison A. Smyth knew of and approved the adoption by his grandson, Thomas Smyth, of the infant David Hutchin-

son Smyth in 1938, and treated this child as he did the children born to his other grandchildren, giving him presents and keeping a photograph of him in his home.

The court below, construing the trust indentures and the will in the light of the facts agreed, adjudged that the trust indentures became effective from date of execution, and the will from the date of the death of the testator; that under those instruments the living children of the three daughters took undivided vested interests in the net income and *corpus* of the trust and estate property, in the proportions designated, subject to the payment of the income to the first takers for life; that one of the daughters of Annie P. Blake having died, leaving two children surviving, these children took a vested interest in the share of their mother in the income and *corpus* of the trust and estate property; that the seven living children of James Adger Smyth, deceased, took each an absolute vested interest in one-eighth of the designated proportion of the net income and *corpus* of the trust and estate property, subject to the payment of one-third of the income to Mary Hutchinson Smyth, widow of James Adger Smyth, for her life; and that as Thomas Smyth, son of James Adger Smyth, was living at the execution of the two trust indentures he took a vested interest in one-eighth of the designated proportion of the net income and *corpus* of the trust property embraced in the trust indentures, and having died before the testator, his interest therein passed to his wife, Frances Thrower Smyth, by his will, and she became entitled to an absolute vested interest in the share to which Thomas Smyth would have been entitled under the trust indentures.

It was further adjudged that Thomas Smyth having legally adopted for life the infant David Hutchinson Smyth, the said infant became the lawful child of Thomas Smyth, and upon the death of Thomas Smyth before the death of the testator Ellison A. Smyth, David Hutchinson Smyth took, by purchase under the will of Ellison A. Smyth by substitution in the place of his father Smyth, a vested interest in the share of his father, Thomas Smyth, in the income and *corpus* of the estate property devised in the will, subject to the payment of his proportion of the income to the widow of James Adger Smyth, for her life.

It was further adjudged that, as to the grandchildren of Ellison A. Smyth now living, upon the death of any leaving child or children such child or children would take *per stirpes* the share of income and *corpus* of the trust and estate property which the parent would have taken if living. It was further adjudged that the vested interests under the trust indentures and will were subject to defeasance only in the event that all persons under any of the respective groupings should become extinct; that in determining such extinction Frances Thrower Smyth should not

SMYTH *v.* McKissick.

be counted at all, and David Hutchinson Smyth included only within the group under the will.

From the judgment, for the purpose of determinative review, all the parties, except defendant Frances Thrower Smyth, appealed.

*Smathers & Meekins for plaintiffs.*
*Geo. A. Shuford for defendant David Hutchinson Smyth.*
*Robert Lee Smith for defendant Frances Thrower Smyth.*
*Wm. F. Toms for defendants Margaret S. McKissick, II, and other infant defendants.*
*J. Samuel Lieberman for defendants Margaret S. McKissick and other adult defendants.*

DEVIN, J. Ellison A. Smyth died 3 August, 1942, at the advanced age of ninety-four, leaving him surviving three daughters, the widow of a deceased son, nineteen grandchildren and twenty-four great-grandchildren. His estate was valued at approximately two million dollars. Some time before his death in order to provide for the distribution of his estate among his descendants he executed two trust indentures and a will whereby he conveyed a portion of his estate and devised the remainder to the plaintiffs as trustees and executors for the purposes therein expressed. These three instruments, covering different species of property, were similar in form and purpose, and the designation of the beneficiaries was in substantially the same language in each. The trustees, to whom the property was thus conveyed and devised, were charged with the duty of holding and investing the funds, and receiving the revenues, income and profits arising therefrom, and making distribution to the trustor's children and grandchildren, both as to income and *corpus.* For the purposes of distribution he divided the beneficiaries, both under the trust indentures and in his will, into four groups or classes. These groups were designated and identified in each instrument by the same letters a, b, c and d, and the trustees were directed to distribute both income and *corpus* of the funds to those embraced in these groups according to certain percentages. The three daughters and the daughter-in-law of the trustor were to receive annually their respective percentages of the income during their natural lives, and then the income was to be distributed to their children in each group, with the proviso "e" that the child of any deceased child should take the part his parent would have been entitled to if living. There was the further provision in clause "f" that if there should be a failure of persons in any of the classes for the division of the income from these trusts, then the share designated for such extinct class should be distributed among the surviving classes.

Upon the death of the survivor of the three daughters and daughter-in-law the trustees were directed then to make final distribution of the funds of the trusts and *corpus* of the estate to those embraced in the four groups according to the percentages fixed, with the same proviso "e" that the child of any deceased child should take the part to which his parent would have been entitled, if living, and with the additional proviso "f" for distribution in the event all the members of any class should become extinct. Subsequent to the execution of the trust indentures and the will, but before the death of the trustor, another angle was introduced into the situation by the fact that Thomas Smyth (embraced in group "b"), son of James Adger Smyth and grandson of the trustor, having no children born of his marriage with Frances Thrower Smyth, in 1938, adopted for life an infant named David Hutchinson Smyth, and thereafter in 1941 died leaving a last will and testament wherein he devised all his property to his said wife.

The plaintiffs as executors and trustees ask the advice of the Court as to the proper ·distribution of the income and *corpus* of the trust funds, and for an adjudication of the respective rights of the beneficiaries under the trust indentures and the will.

At the outset two important questions are presented: (1) What, if anything, did Frances Thrower Smyth take under the will of Thomas Smyth? (2) What, if anything, did David Hutchinson Smyth, the adopted son of Thomas Smyth, take under the trust indentures and will of Ellison A. Smyth?

1. While the trust indentures conveyed personal property to trustees with directions as to the distribution of the income and principal thereof, and the devise of an additional fund in the will contemplated the sale of real property and the distribution of the income and *corpus* thus devised, the ordinary rules of descent and distribution and those governing the devolution of estates are applicable to the provisions of the instruments under consideration, in order to determine the rights of those who are to participate in the benefits thereby conferred in accord with the ascertained intent of the trustor.

The trust indentures directed the trustees to pay the income derived from the trust property to the trustor's descendants according to groups and classes. The group embracing the widow and children of the trustor's deceased son, James Adger Smyth, was designated by the letter "b." To this group was set apart 35% of the total net income. Of this, one-third was to be paid the widow for the term of her natural life, the remaining two-thirds to be equally divided among the children of James Adger Smyth. As one of the children of James Adger Smyth, Thomas Smyth received one-eighth of two-thirds of 35% of the total net income from the trust property until his death in 1941. The trust indentures

contained provision "e" to the effect that the child or children of any deceased child of James Adger Smyth should take the part to which his parent would have been entitled, if living. That meant that the child of Thomas Smyth, upon the death of the latter, would be the one to succeed to his share. Thus, the interest of Thomas Smyth, if vested, was defeasible upon his death before the final vesting of the estate in the ultimate takers. The person to take on the death of Thomas Smyth was to be ascertained at that time. *Mercer v. Downs,* 191 N. C., 203, 131 S. E., 575; *Trust Co. v. Stevenson,* 196 N. C., 29, 144 S. E., 370; *Woody v. Gates,* 213 N. C., 792, 197 S. E., 561. As was said by *Adams, J.,* in *Trust Co. v. Stevenson, supra,* "Considered in the light of these decisions the words 'if living,' in the fifth item of the will, are manifestly referable to the death of the life tenant." What then passed to Thomas Smyth's devisee from the trust fund? It follows that when Thomas died his will so far as the trust fund was concerned conveyed nothing, and that the interest he would have been entitled to if living passed by the terms of the trust instruments to his child, if there was one capable of qualifying as such, or to those entitled to take upon his death during the lives of the first takers.

The contingency of one or more of the trustor's grandchildren dying without children does not seem to have been specifically provided for, other than the direction in paragraph "f." However, we think, by analogy to the statutes of distribution, the implication is that he intended in case one of his grandchildren died without issue, his part of the income from the trust would pass to his surviving brothers and sisters, and only upon extinction of an entire group would it pass to other surviving groups.

The final distribution of the *corpus* of the trust funds established by the trust indentures was postponed until after the death of the trustor's three daughters and daughter-in-law. It was declared that "upon the death of the survivor" of the four, "then and as soon thereafter as practicable," distribution should be made by dividing the *corpus* into four parts, of which one part—35%—should be divided among the children of James Adger Smyth, the child of any deceased child to take the part to which his parent would have been entitled if living. So that, if Thomas Smyth had survived to the time fixed for the final distribution, he would have received one-eighth of 35% of the *corpus* of the trust estate. Since he died in 1941, prior to that time, his child, if any, was the one designated as capable of taking the part to which Thomas Smyth would have been entitled. Thomas Smyth received the income from the trust as long as he was able to answer the annual roll call, and when he died his devisee could not answer for him. Mrs. Frances Thrower Smyth cannot bring herself within the description,

expressed in the trust indentures and will, of the person to take upon the death of Thomas Smyth (*Bowen v. Hackney,* 136 N. C., 200, 48 S. E., 997). Likewise, when the last survivor of the life tenants shall pass away, "then" upon the final roll call only those then entitled can answer. At that time, it is provided that if there should be a failure of persons within any of the classes designated for distribution of the *corpus* of the trust, the share of such extinct class shall be distributed among the surviving classes.

In its simplest form we have this situation: The trustor conveys property to trustees in trust to pay the income derived therefrom annually to A during the lifetime of B, and, upon the death of B, to pay the *corpus* to A. A dies during the lifetime of B, leaving a will bequeathing all his property to C. If that were all, the solution would not be difficult. But the addition of the further provision that in case of the death of A, his child should take the part A would have been entitled to if living, presents a different situation.

If the conveyance of property in trust for the payment of income to Thomas Smyth be regarded as creating in him a vested interest in the income and *corpus* of the trust fund, it was defeasible upon his death before the expiration of the trust period, and it seems, from the language in which the beneficiaries are designated and the method of distribution declared, that the trustor's intention should be ascertained to mean that upon the death of Thomas Smyth his child would stand in his shoes, and that both as to annual income and final distribution only those then entitled could answer to the roll call. This seems to be the rule established by the decisions in *Bowen v. Hackney,* 136 N. C., 187, 48 S. E., 997; *Haywood v. Rigsbee,* 207 N. C., 684, 178 S. E., 102; and *Knox v. Knox,* 208 N. C., 141, 179 S. E., 610. The distinction between these cases, here controlling, and those cases in which the person to take is determined at the death of the testator, is clearly drawn in *Witty v. Witty,* 184 N. C., 375, 114 S. E., 482.

The facts in the case at bar are distinguishable from those in *Lyon v. Bank,* 128 N. C., 75, 38 S. E., 251, where a fund was established for the payment of income to certain beneficiaries for life, with provision that as each one died his part of the *corpus* be paid to his personal representative. This was held subject to disposition by will.

True, the beneficiaries of trust property who are *sui juris* and whose rights are vested may dispose of their equitable interests in the trust property (26 R. C. L., 1264), but where the interest of a beneficiary is made defeasible upon his dying with children to whom the interest passes by substitution, a different rule applies. The distinction between the case where the devolution is dependent upon a contingency rendering uncertain who is to take, and the case where the vesting of the property

right depends upon a contingency but the person to take is certain, is illustrated by *Fisher v. Wagner,* 109 Md., 243, 21 L. R. A. (N. S.), 121. In that case the devise was to Aminta Green, but in case she died without children, to Fisher, his heirs and assigns, absolutely. Fisher died in the lifetime of Aminta Green, leaving a will wherein he devised the property to his wife. The will of Fisher was· held good, since the person to take in the event Aminta Green died childless was certain. See also *Reilly v. Mackenzie,* 134 Atl., 502, 48 A. L. R., 778.

It is suggested that the conveyance or devise of the income from the trust fund vests the title to the fund in the beneficiary, but we do not think this principle applicable here. It was said in *Benevolent Society v. Orrell,* 195 N. C., 405, 142 S. E., 493: "In the absence of a clear intention to separate the income from the principal an absolute devise of the income from the land passes the land itself." But it was noted in that case that the rule would be otherwise if the trustor expressed an intention inconsistent with the transfer of the title to the beneficiary and indicated an intention to separate the income from principal, as by the appointment of a trustee. *Cole v. Bank,* 186 N. C., 514, 120 S. E., 54, 69 C. J., 402.

In support of the view that the trustor intended that the interests of the children of his son and daughters, both as to annual income and principal, should survive to those only who could answer to the description at the roll call, it may be noted that the grandchildren are designated by class rather than by name. *Wooten v. Hobbs,* 170 N. C., 211, 86 S. E., 811; *Mebane v. Womack,* 55 N. C., 301. However, from a consideration of the language in which the several instruments are couched, for the purpose of ascertaining the intent of the testator (*Heyer v. Bulluck,* 210 N. C., 321, 186 S. E., 356), we think the children of the trustor's grandchildren took by purchase and not by descent, and that the interests of the grandchildren were defeasible upon their dying during the life of the first takers, leaving children, who, in that event, were to take the part to which their parents would have been entitled, if living, and that upon the death of a grandchild during the trust period only those coming within the description, or those then entitled, were capable of answering the roll call for annual or final distribution.

2. The trust indentures executed by Ellison A. Smyth in 1932 and 1936 became effective as of those dates. The rights and interests thereby conveyed became fixed, and the description of those who were to become beneficiaries was then defined. At that time Thomas Smyth was living and no child had been adopted. Therefore, it follows that the word "child" used in these instruments to designate the one to take upon the death of Thomas Smyth was not comprehensive enough to include a child adopted by him several years thereafter. *Leeper v. Leeper,* 347 Mo.,

SMYTH v. McKISSICK.

442, 147 S. W. (2d), 660, 133 A. L. R., 586, annotation 597; *Re Puter-baugh,* 261 Pa., 235, 104 Atl., 601, 5 A. L. R., 1277, annotation 1280, 1 Am. Jur., 664. The general rule is that the word "child," standing alone, when used in a deed as referring to those to take in succession, does not include the adopted child of another, unless it appears from the instrument itself or attendant circumstances that it was so intended. There is nothing in the language of the trust indentures here to indicate that the testator intended to include any others than those of his blood, and there were no extraneous circumstances, existing at the time of or before the execution of the trust indentures, which would lend color to the suggestion that an adoption by Thomas Smyth was anticipated or contemplated. 69 C. J., 177. Hence, we conclude that David Hutchinson Smyth, the subsequently adopted child of Thomas Smyth, is not entitled to take under the trust indentures, since it could not have been in the contemplation of the trustor, at the effective dates of these instruments, to include an adopted child within the meaning of the word "child" as used therein in paragraph "e" to designate those to take upon the death of the trustor's grandchildren.

However, we think a different result is reached when we come to consider the right of the adopted child to take the part set aside for his father under the will. The will of Ellison A. Smyth spoke from his death in 1942. At that time Thomas Smyth was dead, leaving an adopted child. David Hutchinson Smyth had become in law the child of Thomas Smyth and Frances Thrower Smyth, as respects them, as much so as if he had been born to them by natural law. While his adoption did not constitute him an heir of Ellison A. Smyth (*Grimes v. Grimes,* 207 N. C., 778, 178 S. E., 573), yet as the lawful child of Thomas Smyth he was entitled to take in substitution and as representative of his adopting father. He was then qualified in every legal aspect, as the "child" of Thomas Smyth, to step into his father's shoes, and as the son of his father take property rights which had been set aside for his father. This was evidently what *Justice Brogden* had in mind when he wrote for the Court, in *Tankersley v. Davis,* 195 N. C., 542, 142 S. E., 765, "The words of the deed 'during the term of her natural life, and thereafter to any child or children she may have surviving her in fee,' nothing else appearing, would undoubtedly vest the title to the property in the adopted child."

In *Mooney v. Tolles,* 111 Conn., 1, 149 Atl., 515, 70 A. L. R., 608, where a trust was created by will, for the benefit of a son and his child or children, with provision that upon the death of the son the principal of the trust should be paid to his child or children, it was held, under the Connecticut statute, that the word "child" included a child adopted some time before the death of the testatrix and with her knowledge and

approval. In the annotation under the *Mooney case* in 70 A. L. R., 621, will be found numerous decisions bearing on this point.     .

We have recently dealt with the question of the hereditable rights of adopted children in *Grimes v. Grimes,* 207 N. C., 778, 178 S. E., 573. The facts in that case were these: T. J. Grimes died intestate in 1933. His son, W. T. Grimes, died intestate, and without issue in 1931, but having previously, in 1924, adopted for life a child, William P. Grimes. It was held in a well considered opinion by *Schenck, J.,* that the adopted child could not take as heir of T. J. Grimes. Under the statute then in force the adopted child, by virtue of the establishment of the relationship of parent and child, was entitled to take as heir and next of kin the real and personal property of his adoptive father, but the statute did not extend to the child the right to inherit from his father's ancestors or other kindred. This interpretation of the statute is in accord with the concensus of·judicial opinion in other jurisdictions where similar statutes prevail. 120 A. L. R., 837, 70 A. L. R., 621; 1 Am. Jur., 662. However, the ruling on the facts in the *Grimes case, supra,* is not controlling on the facts of the case at bar, since they differ in material respects. Here the property passed by will, and the will used the word "child" to designate the one capable of succeeding to Thomas Smyth's share of the fund. That designation must be held sufficient to include the adopted child, when considered in connection with the admitted fact that Ellison A. Smyth four years before his death knew and approved of the adoption of David Hutchinson Smyth, thereafter recognized him as a member of the family, and treated him as he did his other great-grandchildren, and so continued after Thomas Smyth died leaving no natural children, without changing his will or limiting the meaning of the word "child" to those related by blood.

Upon a due consideration of the will, in the light of all the surrounding circumstances, construing the provision that upon the contingency of the death of Thomas Smyth during the life of the first takers the one to take his part was his child, we think that David Hutchinson Smyth, who was at the time the will became effective legally qualified as the child of Thomas Smyth, was capable, upon the death of Ellison A. Smyth, of taking by substitution the share already created and set apart for Thomas Smyth.

3. It follows from what has been said that the children of the trustor's daughters, designated by the letters "a," "c" and "d," took a vested interest (subject to the life rights of their mothers), defeasible upon their dying during the lifetime of their respective mothers, since in that event the child of any deceased child of Margaret S. McKissick, Annie P. Blake or Sarah S. Hudgens would "take the part to which his or her parent would have been entitled, if living."

As Mrs. McKissick had only one child, in case of his death in her lifetime, his children would take the share he would have been entitled to if living; and in case of his death, before that of his mother, without children or issue of children, then his share would be divided among the surviving classes according to paragraph "f," subject to the life right of Mrs. McKissick.

In the case of the children of Mrs. Blake and Mrs. Hudgens the same rule would be applied as herein applied to the children of James Adger Smyth, subject to the right of these daughters of the trustor to receive the percentage of income designated in the trust indenture and the will during the term of their natural lives.

Except as herein modified the judgment of Judge Alley is in all respects affirmed. The costs of this Court will be paid by the estate.

Modified and affirmed.

SCHENCK, J., took no part in the consideration or decision of this case.