Charlotte CUTRER, Individually and Guardian of the Estate and Person of Jeffrey Hermann Cutrer, a Minor, Appellant,

v.

John Clark CUTRER, Jr., et al., Appellees.

No. 13581.

Court of Civil Appeals of Texas.

San Antonio.

April 6, 1960.

Rehearing Denied April 27, 1960:

Lang, Byrd, Cross, Ladon & Oppenheimer, San Antonio, for appellant.

Schweppe, Schweppe & Allison, Stahl & Sohn, San Antonio, for appellees.

BARROW, Justice.

Charlotte Cutrer as guardian of the estate of Jeffrey Hermann Cutrer, a minor, plaintiff below and appellant here, sued Ruby Henderson, guardian of the estate of John Clark Cutrer, Jr., a minor, and the National Bank of Commerce of San Antonio, defendants below and appellees here, to enforce the claim of Jeffrey Hermann Cutrer to an undivided interest in three trusts. Ruby Henderson, as guardian aforesaid, duly answered, and National Bank of Commerce of San Antonio, Trustee, answered by bill of interpleader and tendered the trust estate into court.

The trial was to the court and judgment was rendered denying completely the claim of Jeffrey Hermann Cutrer. John Clark Cutrer, Jr., will be referred to as John C. Cutrer, Jr., and his father, John Clark Cutrer, will be referred to as John C. Cutrer.

The controlling facts, as appear from appellees' brief, are as follows:

Stella Cook Herff was a settlor and plaintiff's main witness in the case. Her first marriage was to John Cutrer. Two children were born of this marriage,— John Clark Cutrer and Stella Cook Cutrer. John Clark Cutrer was born on December 18, 1921.

Stella Cook Herff next married Dr. Andrew Wessels in 1932; this marriage terminated in 1950, and she is presently the wife of Dr. Ferdinand Herff.

Her daughter, Stella Cook Cutrer, married and is now Stella Cook Meyer.

Her son, John Clark Cutrer, married Barbara Lucille Steussy on June 10, 1945. They had a son, John Clark Cutrer, Jr., born on May 24, 1947. Barbara Lucille Steussy Cutrer was divorced from John Clark Cutrer on January 20, 1949 and died on January 6, 1958.

Charlotte Wessels (no relation to Dr. Andrew Wessels above), the mother of

Jeffrey Hermann Wessels who was born November 1, 1945, married John Clark Cutrer on May 19, 1954. John Clark Cutrer adopted Jeffrey Hermann Wessels on May 24, 1955.

John Clark Cutrer died on May 7, 1958. Ruby Henderson, the maternal grandmother of John Clark Cutrer, Jr., was appointed guardian of his estate on December 9, 1958, and said child is now in her custody.

### The Three Trusts

*Trust No. 53.* This trust was executed by Stella Cook Wessels on December 29, 1937. Under its terms she deposited $5,000.00 with the National Bank of Commerce, as Trustee, with powers of investment. Her son, John Clark Cutrer, was named as principal beneficiary. Paragraph III provided:

"that the Trust hereby created is a gift and shall be and remain irrevocable insofar as I am concerned;"

In paragraph V, she provided for monthly payments to John Clark Cutrer,

"such monthly payments shall continue until the death of my son, John Clark Cutrer, at which time this Trust shall terminate and shall descend to his child or children, share and share alike; but should the said John Clark Cutrer die leaving no children, then this trust estate shall pass to and vest in his sister, Stella Cook Cutrer, or her surviving child or children; and in the event the said Stella Cook Cutrer predeceases her brother and leaves no issue, then this trust estate shall be paid over to some Episcopal Church of the City of San Antonio in Bexar County, Texas, to be selected by the Trustee herein."

*Trust No. 79.* This trust was executed by Dr. Andrew B. Wessels on May 6, 1941. He was the then husband of Stella Cook Wessels. Under its terms, he deposited $6,000.00 with the National Bank of Commerce, as Trustee. In every other respect

it is word for word identical with Trust No. 53. It appears on the face of this instrument, that aside from depositing $6,000.00, instead of $5,000.00, Andrew B. Wessels merely copied the terms of Trust No. 53, executed by Stella Cook Wessels on December 29, 1937.

*Trust No. 173.* It appears that in 1923 F. W. Cook, the father of Stella Cook Herff, placed $10,000.00 with the San Antonio Loan & Trust Company, to be administered as a "Trust Estate." Under date of January 31, 1942, this trust estate was acknowledged to be in the sum of $22,389.19, and was carried by the San Antonio Loan & Trust Company as "Trust Estate of John Cutrer and Stella Cutrer, Minors." On that date Mrs. Stella Cook Herff, then Stella C. Wessels, joined by her then husband Andrew B. Wessels, and her children, Stella Cook Cutrer and John Clark Cutrer (only nineteen years of age) executed an instrument by the terms of which Stella Cook Wessels was to have "full, sole and exclusive control of the said fund" until her death, or January 1, 1952, whichever date shall first occur, with the right to leave the funds with San Antonio Loan & Trust Company. Upon her death, or January 1, 1952, one-half of the undisbursed fund was to belong to her son John Clark Cutrer and the other one-half to her daughter Stella Cook Cutrer.

On September 23, 1946, the same parties executed another instrument, cancelling the instrument of January 31, 1942, and acknowledging that the San Antonio Loan & Trust Company had possession of funds under an account styled "Trust Estate of John Cutrer and Stella Cutrer Meyer" (the daughter having married), with the termination date extended to January 1, 1960, or the death of Stella C. Wessels, whichever shall first occur; Stella Cook Wessels had the right to change Trustees. Paragraphs 11 and 12 of this instrument provided:

"11th: The equitable owners of the said Trust Estate are as follows: One-

half thereof belongs to John Cutrer, and the remaining one-half thereof belongs to Stella Cutrer Meyer. Should John Cutrer die before the 'Date of the Final Disbursement', his portion of the trust estate remaining undistributed shall thereafter belong to the heirs of his body, and should he not be survived by any heirs of his body, then his portion shall belong to Stella Cutrer Meyer. Should Stella Cutrer Meyer die before the 'Date of the Final Disbursement,' her portion of the Trust Estate remaining undistributed shall thereafter belong to the heirs of her body, and should she not be survived by any heirs of her body, then her portion shall belong to John Cutrer.

"12th: Should both John Cutrer and Stella Cutrer Meyer die before the disbursement of the Trust Estate, and should neither be survived by the heirs of the body of either of them, then the equitable owners of the Trust Estate shall be Stella Cook Wessels, and should she not be living, then the equitable owners of the Trust Estate shall be the heirs of F. W. Cook."

On December 26, 1946, Stella C. Wessels exercised her authority to direct the transfer of this Trust Estate out of the possession of the San Antonio Loan & Trust Company into the possession of the National Bank of Commerce.

Trust No. 53 will be referred to as the Stella Wessels Trust; Trust No. 79, as the Andrew Wessels Trust, and Trust No. 173, as the Cook Trust.

Appellant predicates her appeal primarily upon the right of Jeffrey Hermann Cutrer, the adopted child, to participate as a remainderman in the three trusts involved in the case. Appellant contends that, having been legally adopted in May, 1955, under the provisions of Article 46a, Vernon's Ann.Civ.Stats., as amended in 1951, Jeffrey Hermann Cutrer became, under Section 9 thereof, a child of John C. Cutrer as fully as though naturally born to said parent in lawful wedlock, and that under such statute he became an heir of the body of John C. Cutrer, as applied to the trust known as Trust No. 173.

We shall first consider the Stella Wessels Trust and the Andrew Wessels Trust. Inasmuch as the provisions of these two trusts are identical, we will discuss only the Stella Wessels Trust.

This trust was executed by Stella Cook Wessels, joined pro forma by her then husband, Andrew Wessels. Under the terms of this written trust she deposited in the National Bank of Commerce of San Antonio, as trustee, the sum of $5,000.00, with power of investment. Her son, John C. Cutrer, was named as principal beneficiary. The trust provided for monthly payments to him, and then provided:

"Such monthly payments shall continue until the death of my son, John Clark Cutrer, at which time this trust shall terminate and shall descend to his child or children, share and share alike * * *."

The trust instrument then provided for other alternative beneficiaries in the event her son should die leaving no children. By its terms, the trust is made irrevocable.

■ Appellant takes the position that because of the passage of Article 46a, § 9, Vernon's Ann.Civ.Stats., 1931 Session Laws, Ch. 177, p. 300, the adopted child, Jeffrey Hermann Cutrer, became the child of John Cutrer for every purpose, and, therefore, he became one of the beneficiaries of the Stella Cook Wessels Trust as well as the Andrew Wessels Trust. We do not agree with that contention. We believe, under the authorities construing Article 46a, § 9, the term "child or children" is not so broad as to include an adopted child when used by private persons in private transactions, unless the language used clearly indicates that the parties so intended, or is required by statutory definition. Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588, Id., Tex.Civ.App., 273 S.W.2d 893; 95 C.J.S. Wills § 653,

p. 954; 1 Am.Jur. 665, Adoption of Children, § 64. The rule has been stated in 95 C.J.S. Wills § 653, p. 954, as follows:

"Ordinarily, an adopted child is not actually a child of the adopting parent, and does not come within the usual meaning of 'children,' as used in a will to designate beneficiaries. However, whether the term 'children' as so used in a will includes adopted children as well as children of the blood of the person designated depends on the intention of the testator, which must govern, and such intention is to be ascertained from the reading of the will, in the light of all the surrounding circumstances; it will not include an adopted child in the absence of circumstances clearly showing that the testator so intended, but an adopted child will be deemed included in the term when the intention of the testator is clear."

The rule has been similarly stated in 1 Am.Jur. 665, in the following language:

"In the matter of construing the rights of an adopted child to take under a will, it should be borne in mind that it is not a question of the right of an adopted child to inherit, but simply a question of the testator's intention with respect to those who are to share in his estate."

▇ The same rules of construction are applicable to deeds and other contracts, except that in the case of deeds the instrument operates in praesenti and is construed in the light of the circumstances existing at the time of execution and delivery. 14 Tex.Jur., 911, Deeds, § 132.

· ▇ We think the holding of the Supreme Court in Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588, is controlling here. In that case a joint will was executed by B. H. Murphy and wife, Anne E. Murphy, which gave a life estate to the survivor, after which it gave to each of their eight children life estates in different tracts of land with remainder to the child or children or their descendants, and provided further that if such child should leave no surviving child or descendants, then the property should pass to the other seven original remaindermen. B. H. Murphy died in 1928 and Anne E. Murphy caused the will to be probated as to his estate and accepted the benefits thereunder. In 1943, Myrtle Slaton, a daughter of B. H. and Anne E. Murphy, legally adopted a son, John O. Slaton. Mrs. Slaton died on October 12, 1950.

In 1948 Annie E. Murphy executed a codicil in which she reaffirmed the will of herself and her husband, B. H. Murphy, and in said instrument disposed of such property as had not been devised under the joint will and all property acquired by her since its execution. In 1950, Annie E. Murphy duly executed another codicil which stated that it was her desire that the adopted children of her daughters and sons share the same in the estate as if they were born to said daughters and sons. Mrs. Murphy died in 1951 and the joint will and both codicils were probated as the last will of Annie E. Murphy. The suit was brought to construe her will.

The case involved other questions not pertinent here, but, insofar as pertinent, the Court of Civil Appeals, 273 S.W.2d 893, 896, held, in effect, that the 1928 will was not contractual, and divided the entire estate into two parts. It decreed one part to those taking under the will of B. H. Murphy, and one part to those taking under the will of Annie E. Murphy as supplemented and controlled by the two codicils. As to the rights of the adopted child John O. Slaton, the Court of Civil Appeals said:

"Since John O. Slaton was adopted in 1943 and the original will of Annie E. Murphy speaks as of the date of the codicil in 1950, he would therefore take as a natural child of his deceased mother, Myrtle M. Slaton, as to the

estate of Annie E. Murphy. This would be true irrespective of the second codicil executed by Annie E. Murphy declaring that adopted children should have the same rights as natural children, but under such second codicil his rights would be reaffirmed as to the estate devised by Annie E. Murphy. It must be recognized that John O. Slaton's adoption in 1943, though constituting him a natural child under the will of Annie E. Murphy as executed following his adoption, could not affect his status under the will of B. H. Murphy as probated in the year 1928. He was not a 'child' of Myrtle M. Slaton under such provision in the will of B. H. Murphy. This rule would also govern as to any other adopted children in so far as the estate of B. H. Murphy is concerned. Nor would the second codicil executed by Annie E. Murphy as to adopted children vary the will of B. H. Murphy and the vesting of title thereunder as to John O. Slaton or adopted children of any of the surviving seven heirs of B. H. Murphy."

The Supreme Court in an opinion appearing in 273 S.W.2d 588, 597, reversed the Court of Civil Appeals, 273 S.W.2d 893, and held that the will of 1928 was contractual in nature and was binding on Annie E. Murphy. It also stated that as the Murphy children were all living at the time of B. H. Murphy's death, they each took a vested remainder in both the father's and mother's estate, subject to the mother's life estate, citing, among other authorities, Hoch v. Hoch, 140 Tex. 475, 168 S.W.2d 638, which will be hereinafter discussed. The Court then stated that "the rights of all parties to all of the property belonging to either B. H. or Annie E. Murphy, either or both, became fixed as of B. H. Murphy's death. Therefore adopted children of any of the Murphy 'child or children or descendants of any child or children', not being included in these descriptive words,

would take no part of such estate." The Court further said:

"Respondent John O. Slaton was adopted in 1943. He can take no portion of property owned at the time of B. H. Murphy's death. As to the individual property of Annie E. Murphy, both real and personal as we have defined same above, he will share in this under the 1948 codicil in accordance with the express provisions of the Annie E. Murphy codicil of August 5, 1950."

We think it is clear that the Supreme Court by this language reversed the holding of the Court of Civil Appeals that the adopted child could take under the 1948 codicil irrespective of the 1950 codicil.

It is also clear from the express language of the joint will, and particularly paragraphs 1(d) and 2, quoted in 273 S.W.2d on page 591, that if John O. Slaton had been a natural born child of Myrtle Slaton he would have participated in the entire estate of B. H. and Annie E. Murphy. Thus, we think, the Court applied the rule stated above, that the term "child or children" does not include adopted children unless the instrument clearly so provides.

In Hoch v. Hoch, 140 Tex. 475, 168 S.W.2d 638, 641, the Court had before it the claimed right of an adopted child, under the 1931 adoption statute, to administer the estate of the adoptive father under Article 3357, Vernon's Ann.Civ.Stats. The Court held that the adopted child was not entitled to the preference right as next of kin because the child had been adopted prior to the enactment of the 1931 statute, which for the first time made the adopted child the child of the adopting parents for all purposes. The Court did say that if the child had been adopted under the 1931 statute, he would have been entitled to such right because of the above specific provision, but emphasized and re-emphasized that the statute only applied "as between

the adopting parent and the adopted child," and not other persons.

In Spaulding v. Melch, 189 S.W.2d 639, 640, opinion by Justice Norvell, this Court held that where a parent executed a will and had no living child or children but thereafter adopted a child, such child came within the provisions of Article 8293, Vernon's Ann.Civ.Stats., and was an after-born child within the statute. The Court cited the decision in Hoch v. Hoch, supra, wherein the Supreme Court said: "It (Article 46a, Section 9, 1931 statute) intends, as to the children adopted under it, *and, as between the adopting parent and the adopted child,* to create a relation in law and in fact the same as exists under our laws between natural parent and natural child." We think it evident that this was one of the rights given to the adopted child with reference to his father's estate, but is confined to the relationship between father and son by adoption, and has no relation to private instruments executed by other persons.

The words "child" or "children" have definite legal meaning when used in such instruments as contracts, deeds and wills, and do not include adopted children unless it is clear from the language used that such was the intention.

The 1951 amendment of Article 46a, Sec. 9, is not applicable to the facts in the case at bar. All of the trust instruments involved were executed long prior to 1951. The Stella Wessels and Andrew Wessels Trusts are both made irrevocable.

In construing a trust the intention of the settlor at the time of the creation of the trust is determinative. William Buchanan Foundation v. Shepperd, Tex. Civ.App., 283 S.W.2d 325; Judy v. Trollingor, 110 Ohio St. 576, 144 N.E. 44; Trowbridge v. Trowbridge, 294 N.Y. 785, 62 N.E.2d 232. "From the very nature of an inter vivos trust it must so speak. In order for a trust to be a trust, the legal title of the res must immediately pass to the trustee, and beneficial or equitable interest to the beneficiaries." First National Bank of Cincinnati v. Tenney, 165 Ohio St. 513, 138 N.E.2d 15, 18, 61 A.L.R.2d 476. For a case squarely in point see, Smyth v. McKissick, 222 N.C. 644, 24 S.E. 2d 621.

We come to the trust executed by Mrs. Wessels, joined pro forma by her husband, Andrew Wessels, and by her children John C. Cutrer and Stella Cutrer Meyer. The equitable owners of the trust estate were John C. Cutrer and Stella Cutrer Meyer, one-half thereof belonging to each of the two children. The instrument provided that should John C. Cutrer die before the date of final disbursement, "his portion of the Trust Estate remaining undistributed shall thereafter belong to the heirs of his body, and should he not be survived by any heirs of his body, then his portion shall belong to Stella Cutrer Meyer." Then follow provisions not pertinent here.

This trust was originally created in 1929 by F. W. Cook, father of Stella Cook Wessels, by a deposit of the sum of $10,000.00 in the San Antonio Loan & Trust Company, to be administered as a trust estate with John C. Cutrer and Stella Cutrer, minors, as beneficiaries, and was so acknowledged by all the parties by the instrument dated January, 1942. The 1946 instrument superseded and controlled the 1942 instrument.

At the time of the execution of the 1946 instrument, John C. Cutrer was married but had no children. In 1947 John C. Cutrer, Jr., his only child was born. In 1949, John C. Cutrer and his wife, the mother of John C. Cutrer, Jr., were divorced and the custody of the child was awarded to the wife, Barbara Cutrer. In 1954, John Cutrer was married to the natural mother of Jeffrey Hermann and in 1955 he adopted the child, and the decree provided that he should be known as Jeffrey Hermann Cutrer. John C. Cutrer died May 7, 1958.

His son and adopted son, both survived him.

■ Appellant contends that by virtue of the adoption statute, Art. 46a, Sec. 9, the adopted child, Jeffrey Hermann Cutrer, comes within the class named to take under the instrument, and relies strongly on the decision in Hoch v. Hoch, supra, wherein the Court said that the adoption decree intends to create a relationship in law and in fact, the same as exists under our laws between natural parent and natural child. We do not agree with appellant's contention. Such expressions as "heirs of the body," and "bodily heirs," have a legal meaning. While no Texas cases have been cited, and we have found none in point, these expressions have been construed on many occasions, and we think it is well established that an adopted child is the child of the adopting parents by law and not by birth. The adoption does not make a child heirs of the body of the adopting parents. Even though an adopted child has a status in law with respect to the adoptive parents identical to that of a child born of such parents, it does not follow that such status is determinative in construing a will, contract, deed, or other private instrument. Barton v. Campbell, 245 N.C. 395, 95 S.E.2d 914; Adams v. Merrill, 45 Ind.App. 315, 85 N.E. 114; In re Pierce's Estate, 32 Cal.2d 265, 196 P.2d 1; In re Miller's Trust, 133 Mont. 354, 323 P.2d 885. The term heirs of the body, in its commonly accepted sense, means issue of the body, offspring, progeny, natural children, physically born and begotten by the person named as parent. An adopted child is the issue of his natural parents and not of his adopted ones. In re Millers' Trust, supra. The expression "heirs of the body" is a restrictive term, as compared with the term "heirs" generally, or with the term "child or children," and when used in such instruments it must be construed to mean and include only children actually begotten and born of the parents in question.

■ By appellant's third point it is contended that the court erred in refusing to consider extrinsic evidence to determine the intent of the settlors. This point is overruled. The trust instruments are clear, certain and unambiguous with respect to the beneficiaries named therein as a class, and by clear and unambiguous language adopted children are excluded. Furthermore, the trial court did permit the parties to introduce such evidence of the facts and circumstances surrounding the transaction and the relationship of the parties as they desired. We have carefully examined the testimony and find no evidence which would tend to show that the settlors had any intention other than that disclosed by the language of the instruments.

■ Appellant's fourth point urges that the court erred in refusing to consider testimony of the declarations of settlors now deceased, to determine their intent. And in the fifth point it is contended that the court erred in refusing to consider testimony of a living settlor to determine her intent. These points must be overruled.

It appears from the record that appellant sought to have Mrs. Stella Cook Herff (formerly Mrs. Stella Cook Wessels) testify that it was her intention that Jeffrey Hermann Cutrer, the child adopted in 1955, should participate in each of the trusts as a child of and as an heir of the body of her son, John C. Cutrer. Appellant also sought to prove by her that she had conversations with her former husband, Andrew Wessels, and her son, John C. Cutrer, and that each of them had expressed to her a like intention. The trial court's ruling in excluding this testimony is correct.

■ The cardinal rule in construing written instruments is to ascertain and give effect to the intention of the parties, as expressed in the language used by them. The instrument will be enforced as written, no matter what the actual intention of

the parties may have been, in the absence of a showing of fraud, accident or mistake. 10 Tex.Jur. pp. 274, 275, 276, § 160. When the parties have reduced their agreement to writing, it is taken to be the final expression of their intention. 14B Tex.Jur. 583, § 134. In construing a deed the question is not what the parties meant to say, but the meaning of what they did say. Sims v. Woods, Tex.Civ.App., 267 S.W. 2d 571. If the parties had a particular intention, but the provisions of the deed expressed another or different intention, the only remedy, if any, would be the voidance or reformation of the deed. Stewart v. McKee, Tex.Civ.App., 150 S.W.2d 415. In this case appellant does not seek to reform the instruments, and does not plead nor seek to prove that by reason of either fraud, accident or mistake, the instruments were not drawn or worded according to the wishes of the parties thereto, but seeks to engraft on the instruments undisclosed intentions of such parties. The court did not err in excluding that testimony.

Finding no error, the judgment is affirmed.