# FILIPINO FEDERATION OF AMERICA, INCORPORATED, A CALIFORNIA CORPORATION *v.* ALFONZO CUBICO, ELEUTERIO BULAWAN, CHRISANTO BOLILAN, ALFONZO NAGAL, GREGORIO ORDISTA, AND ARCADIO AMPER.

No. 4119.

MARCH 21, 1963.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

354

Plaintiff-appellant Filipino Federation of America, Incorporated, a California corporation, instituted suit in the circuit court of the first circuit to acquire the legal title to and the beneficial interest in certain parcels of land and improvements thereon situated in the City of Honolulu, Oahu, Hawaii.

The plaintiff Filipino Federation of America, Incorporated, was organized for eleemosynary purposes in 1927 by the late Hilario Camino Moncado who was its president and treasurer from the date of its incorporation until his death in 1956.

Plaintiff extended its activities to Hawaii in 1928 when several of its members, including the defendant Alfonzo Cubico, were sent from California to organize branches on the islands of Oahu and Hawaii. Later branches were also established on the islands of Maui, Lanai and Kauai. About 1931, there came into being in the then Territory of Hawaii, what was known as the Spiritual Division of the Filipino Federation of America, Incorporated. Section 12(a) of the 1936 amended bylaws of the Filipino Federation of America, Incorporated, specifically deals with the corporation's activities in Hawaii. Section 12(a)(9) provides as follows:

"Any member of the material group who joins the Spiritual Division of the Federation shall not be exempt from paying his monthly dues. The said member who joins the Spiritual Division shall be obliged to pay his regular monthly dues to the branch where he formerly belonged."

In the membership section of the bylaws, there is a pro-

vision for various types of membership but there is no provision for membership in the Spiritual Division. Although there is another section in the bylaws that deals with the activities of the Filipino Federation of America, Incorporated, in the Philippine Islands there is no provision for membership in the Spiritual Division similar to that in Hawaii. The only reference in the entire bylaws of the Filipino Federation of America, Incorporated with reference to membership in the Spiritual Division is the above-mentioned section 12(a) which governs the activities of the Federation in the Territory of Hawaii.

The members of the Spiritual Division in Hawaii were distinguishable from the members of the Material Division.[1] They were all members of the Filipino Federation of America, Incorporated, but Spiritual Division members differed from the members of the Material Division for they emphasized the moral precepts of the Filipino Federation of America, Incorporated, and held peculiar beliefs and practices which were not shared by the material members. They regarded themselves as sharing a common faith and fellowship as members of the Spiritual Division and all of their activities were separate and distinct from those of the Material Division and in turn were so regarded by the members of the Material Division.

In 1941 there were about 1,000 members in the Spiritual Division organized into branches on the major islands in the Hawaiian chain, namely, Oahu, Maui, Hawaii, Kauai and Lanai. On these islands, the members of the Spiritual Division held regular meetings and practiced their peculiar beliefs which were not shared by the

---

[1] In order to qualify for membership in the Spiritual Division, an individual had to "fast for three days and nights without water and food." Spiritual Division members did not eat "meat, pork or other bloody things." They usually had a long hairdo which was braided, but this practice was not mandatory. They held regular Bible services but did not have any ordained ministers.

material members. Membership in the Material Division numbered between 1,000 and 2,000 members.

In 1940 defendant Alfonzo Cubico was appointed director of the Spiritual Division in Hawaii and was placed in full charge of its activities. In 1941 at the suggestion of President Hilario Moncado, defendant Cubico began purchasing the following fifteen parcels of land, which, together with the improvements thereon, are the subject of the present controversy.

Lots 1, area 7,732 sq. ft.
2, area 6,000 sq. ft.
6, area 5,000 sq. ft.
38, area 11,526 sq. ft.
42, area 9,590 sq. ft.
43, area 8,240 sq. ft.
44, area 9,224 sq. ft.
46, area 10,113 sq. ft.
47, area 9,996 sq. ft.
48, area 11,009 sq. ft.
49, area 9,728 sq. ft.
50, area 9,652 sq. ft.
51, area 8,730 sq. ft.
52, area 7,807 sq. ft.
53, area 8,659 sq. ft.,

total area 105,952 sq. ft., all as shown on Map 13 filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 47 of P. C. Jones, Limited. All of these lots abut on Kalaepaa Drive in upper Kalihi Valley, Honolulu, Oahu, Hawaii. The improvements thereon are as indicated in the footnote.[2]

2 "THE COURT: I see 'Cubico House' is indicated on Lots 1 and 2. On Lot 6, some indication of a house. On Lot 38, 'Club House.' Lot 42, 'Monument.' Lot 43, 'Church.' Lot 44, it says 'Moncado House & Office.' Lot 45, 'volley ball court.' I take it then that the other lots are empty; is that right?"

Defendant Alfonzo Cubico acquired title by deeds of trust to Lots 1, 2, 6, 38, 46, 47, 48, 49, 50, 51, 52 and 53 on June 2, 1944 (Exhibit A in evidence) and to Lots 42, 43 and 44 on January 15, 1945 (Exhibit B in evidence), under the following written and declared trusts:

"TO HAVE AND TO HOLD the same unto the said Grantee as Trustee for the Filipino Federation of America, Inc., Spiritual Division, a California corporation, the business address of which corporation in said Territory is Watumull Building, 1166 Fort Street aforesaid, and the successors and assigns of said Trustee, in trust for the following uses and purposes and with the following powers:

"1. To hold the legal title to said premises for the benefit of said corporation, and to manage, use or permit the use of (by members of said corporation), improve, let, lease, sell on time or for cash or agree so to do, or in any manner otherwise dispose of or deal with, or agree so to do, the said property or any portion or portions thereof, or interest therein, as in the sole judgment of said Trustee shall be in the best interests of the said corporation and the members thereof, it being a condition of this conveyance that any agreement made with respect to, or any disposal of, the said premises or any portion thereof or interest therein, by said Trustee shall be binding and conclusive upon said corporation and all members thereof, and upon the trust which said Trustee represents.

"2. In the event of the death, removal, incompetency or other incapacity of the Trustee, a successor Trustee may be appointed by said corporation by instrument in writing duly executed and filed with said Assistant Registrar, and immediately upon such filing said successor Trustee shall *ipso facto* be vested with and succeed to the title to said trust property and all

rights, powers and duties of the original or preceding Trustee without the necessity of any other or further act."

In addition to the fifteen lots purchased by defendant Alfonzo Cubico, there were 48 other lots in the subdivision in upper Kalihi Valley, of which 20 lots were purchased by one or more members of the Spiritual Division and only one of which was purchased by a member of the Material Division.

President Hilario Camino Moncado died on April 8, 1956. Victor Ramajo, who was then vice-president, became the acting president and made his first trip to Hawaii in September 1956. The great majority of the members of the Spiritual Division refused to recognize Mr. Victor Ramajo as their leader and in December 1956 formed the Moncado Foundation of America, Limited, a Hawaii corporation, with Diana Toy Moncado, widow of President Moncado, as president.

On June 7, 1948 defendant Alfonzo Cubico, as trustee, conveyed Lots 1, 2, 6 and 38 to defendant Eleuterio Bulawan who immediately reconveyed said lots to defendant Alfonzo Cubico. On August 22, 1956, Alfonzo Cubico conveyed Lots 6 and 38 to Diana Toy Moncado and said Diana Toy Moncado, by deed dated December 19, 1956, conveyed said Lots 6 and 38 to defendant Eleuterio Bulawan. On the same date Alfonzo Cubico conveyed Lots 42, 43 and 44 to defendant Crisanto Bolilan, Lots 46, 47 and 48 to defendant Alfonzo Nagal, Lots 49, 50 and 51 to defendant Gregorio Ordista, and Lots 52 and 53 to defendant Arcadio Amper. These five, with Alfonzo Cubico, holder of Lots 1 and 2, are the only defendants named in this action. The deeds under which defendants now hold title do not indicate any trust.

Plaintiff contends that defendant Alfonzo Cubico took title to all of the aforementioned lots by way of deeds

of trust as hereinabove mentioned; that the monies necessary to purchase said lots were furnished by the plaintiff corporation through funds raised by members of the plaintiff corporation; that improvements subsequently put on the said lots were furnished by the plaintiff corporation through funds raised among the members of the corporation; that defendant Cubico held title to all of said lots subject to the express trusts hereinabove mentioned, and that all subsequent conveyances were both without consideration and with notice of the fact that Cubico held as trustee for the Filipino Federation of America, Incorporated, Spiritual Division; that beginning early in 1957 all of the defendants disclaimed that they held the lots as trustee for plaintiff corporation and in February 1957, although written demand was made on them, defendants refused to turn over said lots to plaintiff corporation; and that in view of the repudiation of the trust by the defendants, said properties should be conveyed, by the order of the lower court, from defendants to plaintiff corporation.

Defendants deny that any of the land in question or the improvements thereon were paid for by funds furnished by the plaintiff corporation, or that the plaintiff has or ever had any beneficial interest whatsoever in and to the parcels of property in question. Defendants claim (1) that all the lands and improvements were paid for by funds furnished by persons who were formerly members of the Spiritual Division of the Filipino Federation of America, Incorporated, and who are now members of the Moncado Foundation of America, Limited, a Hawaii corporation, which was formed in December 1956 by the former members of the Spiritual Division of the Filipino Federation of America, Incorporated; (2) that the trust created by the deeds of trust mentioned above was for the benefit of the Spiritual Division of the Filipino Fed-

eration of America, Incorporated, and its members only and not for the benefit of the plaintiff corporation or its general membership; (3) that it was the intention of the parties to the deeds of trust to create a trust for the benefit of the Spiritual Division and its members only and if the deeds are not susceptible to such a construction, they should be reformed so as to conform to the intention of the parties; (4) that the above-mentioned conveyances by defendant Alfonzo Cubico were authorized by the trust instruments; (5) defendant Alfonzo Cubico claims he holds the title of Lot 1 for the benefit of C. Ojatis, R. Ruelan, T. Langi, A. Cagas, P. Beroo, C. Cabarci, S. Ocampo, M. Clarabel, M. Recolan, P. Ricardo and defendant G. Ordista and Lot 2 for the benefit of N. Guevarra, A. Simella, S. Nones, L. Genegabuas, R. Patalinghog, C. Billones, R. Crospero, R. Vesande, P. Mitante and C. Cedenio, all of whom paid for these two lots and the improvements thereon or are the successors in interest of the original contributors; (6) the other defendants claim they hold the title to the remainder of the lots in question for the benefit of the Moncado Foundation as the successor in interest of the Spiritual Division, Filipino Federation of America, Incorporated, and the persons who are now members of the Moncado Foundation and formerly members of the Spiritual Division.

On Lots 1 and 2 dwellings have been erected and since then these lots have been occupied by certain members of the Spiritual Division. The remainder of the lots have been in the exclusive possession of the Spiritual Division under the control and management of Alfonzo Cubico, its directer, since they were purchased.

The lower court noted in its pre-trial order the following as a question arising:

   "* * * On the basis of the contention, defendants have submitted as a point to be passed on by the Court the

question of whether the Moncado Foundation of America, Ltd. and the above-named persons who allegedly paid for Lots 1 and 2 and the improvements thereon should be made parties to this action and if so, whether the answer of the defendants should be amended to plead such facts."

With respect to such question of law, the court ruled as follows:

"a. The contention will be considered by the Court as having been properly raised and the answer of the defendants will be deemed to have been amended to plead such facts. No formal amendment of the pleadings is required, but the defendants may, if they desire, file a formal amended answer at anytime.

"b. On the basis of the record presently before the Court, it appears that the interests of the Moncado Foundation and the above named individuals as the beneficiaries of the land in question are adequately represented by the defendants as trustees thereof and that, therefore, they are not necessary parties to this action. However, if it should appear during the course of these proceedings that they are not adequately represented, the Court will order that they be brought in as parties."

The basic question involved in this case is whether the plaintiff corporation has any rightful claim to the beneficial ownership of the property. It involves the determination of the beneficiaries under the deeds of trust, Plaintiff's Exhibits A and B.

The ascertainment of trust beneficiaries depends primarily on the correct interpretation of the words used in the instrument. *Attorney General ex rel. Methodist Religious Soc'y in Boston* v. *Armstrong*, 231 Mass. 196, 120 N.E. 678; *Fidelity Union Trust Co.* v. *Potter*, 8 N.J. Super. 533, 73 A.2d 625; *Manufacturers Trust Co.* v. *Fitz-*

*patrick,* 36 N.Y.S.2d 7; 90 C.J.S., *Trusts,* § 169(a);
*Smyth* v. *McKissick,* 222 N.C. 644, 24 S.E.2d 621.

During the trial, by agreement of the parties, extrinsic evidence was admitted to ascertain the proper beneficiaries. The record presents no dispute as to the right to resort to such evidence.[3]

After a lengthy trial, the lower court found in pertinent part:

"1. That the members of the Spiritual Division of the Filipino Federation of America supplied the funds to purchase all of the lots which are the subject-matter of this action and to build the buildings there-

---

[3] "MR. KASHIWA [Counsel for the Plaintiff]: On these Gilla cards, I will offer Mrs. Gilla to show what this donation was for, for the lots up in Kalihi Valley.

"MR. WATANABE [Counsel for the Defendants]: Which means we are going into the matter of extrinsic value, aren't we?

"THE COURT: The only question is who paid for the lots, regardless of anything else. That's beside the trust document, isn't it?

"MR. WATANABE: That's right, your Honor. That will imply that extrinsic circumstances may be gone into, your Honor.

"(Argument)

"MR. WATANABE: To summarize my point, your Honor, do I understand, your Honor, that the circumstances surrounding this transaction, namely, the purchase of the land in Kalihi Valley and the building and improvements thereon, is admissible in this case, not just for the purpose of impeachment but on the matter of material issues in this case?

"THE COURT: I'm a little curious to know who, if anybody, would object to it.

"MR. WATANABE: I'm not objecting.

"THE COURT: Well, you're not objecting to it and I think Mr. Kashiwa is probably going to want to go into it so I don't think there is really going to be any issue before the Court. I am kind of curious about it myself. I think that is the only way I am going to get the answer to it so, in fact, there is no real issue. We all agree that is what we will have to do, don't we?

"MR. WATANABE: Then this sort of extrinsic evidence is admissible if it is admissible by agreement of counsel and with the concurrence of the Court?

"THE COURT: That's my impression.

"MR. KASHIWA: Let's let it all in. As far as I'm concerned, let's let it all in. I'll bring it all in.

"THE COURT: I have a feeling it is going to be necessary, essentially, so if we all agree now, there won't be any problem."

on without distinction as to Lots 1 and 2 and the remainder of the lots; that all of the funds used to acquire the lots and to erect the buildings were donations of members of the Spiritual Division and that there was no distinction between the funds contributed for the purchase of Lots 1 and 2 and those contributed for the purchase of the other lots.

"2. That it was the intent of the parties to the trust instruments (plaintiff's Exhibits A and B) that the Spiritual Division should be the beneficiary of the trust established thereby.

"3. That the Spiritual Division of the Filipino Federation of America, Inc. was an integrated group of individuals who had a common purpose and a common interest; that although they were all members of the Federation, they constituted a separate group and had a separate identity within the Federation.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"5. That the conveyances made \* \* \* [in 1956] were without consideration and with notice of the trust, \* \* \*."

Based on these findings, the lower court concluded:

"1. That the Spiritual Division of the Filipino Federation of America was the beneficiary named in the trust instruments; that the words 'Filipino Federation of America, Inc., Spiritual Division, a California corporation' contained in the habendum clauses of the trust instruments mean the Spiritual Division and wherever it appears in the trust instruments the word 'corporation' refers to the Spiritual Division; that the plaintiff corporation is not the beneficiary of the trust and has no legal or equitable interest in the trust estate.

"1a. That extrinsic evidence was admissible not so much to construe the trust instruments as to

identify the parties thereto, that is, to identify the legal entities involved, and to determine the factual and legal personalities of the parties thereto; that in any event there was such an ambiguity in the trust instruments as to warrant consideration of the surrounding circumstances and other admissible evidence of the intention of the parties.

"1b. That the Spiritual Division of the Filipino Federation of America was an unincorporated association within the Federation and as such it had its own legal personality.

"2. That the conveyances made by defendant Cubico to the other defendants and others were made without consideration and in violation of the provisions of the trust instruments; * * *.

\*     \*     \*     \*     \*     \*     \*     \*

"5. As noted above (Conclusion of Law 1), the Spiritual Division of the Filipino Federation of America was the beneficiary named in the original trust instruments and that the plaintiff was not the beneficiary and had, and has, no legal or equitable interest in the trust property. * * *"

H.R.C.P., Rule 52(a) provides that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *"

The first question before this court is whether we are left with a definite and firm conviction that a mistake has been committed by the trial court and that the findings of the trial judge are "clearly erroneous." *Peine* v. *Murphy,* 46 Haw —, 377 P.2d 708; *Miller* v. *Loo,* 43 Haw. 76; *Lum* v. *Stevens,* 42 Haw. 286; *Hawaii Builders Supply Co.* v. *Kaneta,* 42 Haw. 111; *Lima* v. *Tomasa,* 42 Haw. 478.

After a careful review of the evidence, we cannot say that the lower court erred in finding that the plaintiff

corporation did not furnish the funds necessary to purchase said lots and to construct the improvements subsequently put on the said lots, or in finding that it was not the intent of the parties that the plaintiff corporation should be the beneficiary of the trusts established by Exhibits A and B.

The second question is whether the conclusions of law are supported by the findings. We hold that, based on such findings, the lower court properly concluded that the plaintiff corporation is not the beneficiary of the trust deeds and has no legal or equitable interest in the trust estate.

It is contended that, unless plaintiff corporation was the beneficiary of the trust deeds, the deeds were invalid because of the indefiniteness of beneficiaries and the rule against perpetuities. Such contention, if well taken, does not support plaintiff's claim because—as found—the funds used in purchasing the property and erecting the buildings came from members of the Spiritual Division and not from funds of plaintiff corporation. See Restatement, *Trusts,* § 424 (2d ed.).

Under the pleadings as superseded by the pre-trial order, the sole legal question for determination by the court was whether the plaintiff, Filipino Federation of America, Incorporated, a California corporation, was a beneficiary under the trust expressed in Plaintiff's Exhibits A and B. Although the pre-trial order did say that the answer of the defendants would be deemed to have been amended to plead the facts with reference to Alfonzo Cubico as holding title to Lots 1 and 2 in trust for certain named beneficiaries and to the other defendants as holding the title to the remainder of the lots for the benefit of the Moncado Foundation of America, Limited as successor of the Filipino Federation of America, Incorporated, Spirit-

ual Division, such an answer cannot be construed as broadening the scope of the original complaint to inject the question: Who are the beneficial owners of the lots if plaintiff is not? The alleged individual beneficiaries of Lots 1 and 2 were not made parties to the proceeding. They were represented only by Alfonzo Cubico,[4] whose relation to Moncado Foundation was such that he could not represent them in any conflict developing between themselves and Moncado Foundation. Where "there is a conflict of interest between the several *cestui que* trusts * * * the presence alone of the trustee as a party is not sufficient" and all adverse *cestuis que* trust "must be made parties to it either as plaintiffs or defendants." *Estate of Grace,* 34 Haw. 25, 33. Likewise, there is nothing in the record that shows that the members of the Spiritual Division who did not join the Moncado Foundation were fully represented during the trial. The attorney for the plaintiff corporation sought, as alleged in his pleadings, to have the plaintiff corporation declared the beneficiary of the trust property. On the other hand, the members of the Spiritual Division who did not join the Moncado Foundation may argue that they are beneficially interested. Such members of the Spiritual Division were not made parties to this proceeding, and we cannot agree

---

[4] "Q Now on the minutes of the meeting, which is Plaintiff's Exhibit 'EE,' will you look in the minutes here and see if there is anything said with relation to the transfer of Lots 6 and 38 to Bulawan?

"MR. WATANABE: Your Honor, while the witness is reading the document, I wonder if I might raise at this time the question of whether or not it appears that the trustee of Lots 1 and 2 is adequately representing the beneficiaries or the alleged beneficiaries of those lots. Going back to the matter which was reserved in the pre-trial order, if the Court will remember, I raised the question of whether these individual claimants who now live on those lots should not be made parties and the Court ruled they were being adequately represented by the trustee. Now I am wondering if this trustee adequately represented anybody.

"THE COURT: Let's wind up this questioning for now. We can take any subject up after—"

with the court's conclusion that they were represented by plaintiff,[5] which claimed in its own behalf.

The lower court, after trial, decreed as follows:

"1. That the plaintiff have and recover nothing from the defendants by reason of this action, that said action be and the same is hereby dismissed on the merits and that the defendants recover of the plaintiff their costs in this action.

"2. That the title of the defendants in and to the parcels of land hereinafter described by lot number as shown on Map 13 filed in the Office of the Assistant Registrar of the Land Court of the Territory of Hawaii with Land Court Application No. 47 of P. C. Jones, Limited, and as evidenced by the transfer certificates of title hereinafter specified, be and the same is hereby divested, to wit:

Alfonzo Cubico, Lots 1 and 2, Transfer
    Certificate of Title No. 40,825
Eleuterio Bulawan, Lots 6 and 38, Transfer
    Certificate of Title No. 66,784
Crisanto Bolilan, Lots 42, 43 and 44,
    Transfer Certificate of Title No. 66,785
Alfonzo Nagal, Lots 46, 47 and 48, Transfer
    Certificate of Title No. 66,786

---

[5] The Court:

"However, of course, deciding, as I do, that it [land and improvements] was in trust for the Spiritual Division, there may have been some interests of members of the Spiritual Division that are not accounted for, interests which are represented by Mr. Kashiwa, through the Federation. I don't know. As you [Mr. Kashiwa] indicated in your argument, it may be that if you represent some former members of the Spiritual Division who didn't go to the Moncado Foundation, it may be that they have an interest in this property which has not been accounted for. I don't know. * * *"

In the Conclusions of Law the court held, as part of Conclusion No. 5: "The Court further concludes that the members of the Federation who were formerly members of the Spiritual Division and who did not join the Moncado Foundation, *such members having been represented by the plaintiff in this action,* have no legal or equitable interest in the trust property." (Emphasis added.)

Gregorio Ordista, Lots 49, 50 and 51,
Transfer Certificate of Title No. 66,787
Arcadio Amper, Lots 52 and 53, Transfer
Certificate of Title No. 66,788

"3. That ALFONZO CUBICO, an unmarried man, whose residence and post office address is 1781 Kalaepaa Drive, Honolulu, City and County of Honolulu, Territory of Hawaii, and BISHOP TRUST COMPANY, LIMITED, a Hawaii corporation whose principal place of business is at 141 South King Street, Honolulu aforesaid, and whose post office address is P. O. Box 2390, Honolulu aforesaid, are hereby appointed trustees of said real property, and the title to the said premises, namely, Lots 1, 2, 6, 38, 42, 43, 44, 46, 47, 48, 49, 50, 51, 52 and 53, all as shown on Map 13 filed in the Office of said Assistant Registrar with said Land Court Application No. 47 of P. C. Jones, Limited, be and the same is hereby vested in said Alfonzo Cubico and Bishop Trust Company, Limited, IN TRUST, NEVERTHELESS, for the benefit and use of the MONCADO FOUNDATION OF AMERICA, LIMITED, a Hawaii corporation whose principal place of business and post office address is 1534 Kalaepaa Drive, Honolulu aforesaid, as the successor in interest of the Filipino Federation of America, Inc., Spiritual Division, the beneficiary named in those certain deeds of trust dated June 2, 1944 and January 15, 1945, respectively, being Land Court Documents No. 73;231 and 81,533, whereby George C. Cantlay, Trustee, conveyed said premises to Alfonzo Cubico, Trustee. Said trustees shall hold the title to and manage said premises in accordance with the provisions of said deeds of trust, except that no sale of any portion of said premises shall be made without an order of court authorizing the sale. As co-trustee

of said real property, Bishop Trust Company, Limited, shall have no duties to perform with respect to the internal affairs of said Moncado Foundation of America, Limited, and shall not be required to keep accounts of the contributions received or moneys collected by the individual co-trustee from the members of said Moncado Foundation of America, Limited, but shall account for moneys paid over to it by said individual co-trustee."

In support of paragraph three of its decree, the lower court stated in its Findings of Fact and Conclusions of Law that the funds were contributed by members of the Spiritual Division "without distinction as to Lots 1 and 2"; that "the Spiritual Division of the Filipino Federation of America and the Moncado Foundation of America, Ltd., are in fact one and the same; that the Moncado Foundation is in fact the successor of the Spiritual Division; that the members of the Spiritual Division organized the Moncado Foundation; that there was no dissent by any members of the Spiritual Division to the decision to organize the new corporation and to transfer the property to the defendants, Bulawan, Bolilan, Nagal, Ordista and Amper; that the Spiritual Division went out of existence upon the organization of the Moncado Foundation," and that "the members of the Federation who were formerly members of the Spiritual Division and who did not join the Moncado Foundation, such members having been represented by the plaintiff in this action, have no legal or equitable interest in the trust property."

Absence of indispensable parties can be raised at any time even by a reviewing court on its own motion. *Mossman* v. *Hawaiian Trust Co.*, 45 Haw. 1, 361 P.2d 374; *McShan* v. *Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *Haby* v. *Stanolind Oil & Gas Co.*, 225 F.2d 723 (5th Cir. 1955); *Brown* v. *Christman*, 126 F.2d 625 (D.C. Cir.

1942). In paragraph three of the judgment, the lower court erroneously adjudicated directly upon the rights of the members of the Spiritual Division who did not join the Moncado Foundation[6] without the members being either actually or constructively before the court. Likewise, it erroneously adjudicated directly upon the rights of the members of the Spiritual Division or their successors in interest who allegedly contributed the monies for the purchase of and constructing improvements on Lots 1 and 2, and are presently residing on said lots. *McShan* v. *Sherrill, supra; Charles Keeshin, Inc.* v. *Farmers & Merch. Bank of Rogers,* 199 F. Supp. 478 (W.D. Ark. 1961). See also *State of Washington* v. *United States,* 87 F.2d 421 (9th Cir. 1936); *State of California* v. *South-*

---

[6] "Q Now you know the Gilla family, don't you?

"A Yes.

"Q They donated a very large sum of money, didn't they?

"A Yes, they give the money through those cards.

"Q They didn't give any money for the building?

"A Yes, I think they give money because, before, Gilla was also a member of the Spiritual Division.

"Q All right. But Gilla is not now a member of the Moncado Foundation?

"A He is not member of the Moncado Foundation but he came from the Spiritual Division.

"Q Yes. In other words, the Gillas are not listed on Plaintiff's Exhibit 'W,' am I right (handing the exhibit to the witness)?

"A No, it is not here.

"Q Then what did you do with the interest of the Gilla family in and to these lots up in Kalihi Valley? They paid for it, didn't they?

"A What they give—what amount they give for the Master is solely for the Master, and what they gave for the help of that building there, I use it there.

"Q All right. What happened to the interest of the Gilla family in and to those lots?

"MR. WATANABE: Your Honor, I think that's the $64.00 question in this case. I don't think it is competent of this witness to discuss the legal issues.

"THE COURT: You're right. This is the most important question asked so far and certainly he being trustee has got to explain what— how he accounted for the interest of the Gillas, it seems to me.

"(Argument)

"THE COURT: I think he should answer the question, if he can.

"MR. KASHIWA: Will you read the last question?

"(The last question was read.)

"A The Gillas is still included because they also help on that build-

*ern Pac. Co.,* 157 U.S. 229 ; *Minnesota* v. *Northern Securities Co.,* 184 U.S. 199.

As has been seen, the only parties before the trial court were the original trustee under Exhibits A and B, Alfonzo Cubico, and the other defendants who were the subsequent transferees of certain parcels of land from defendant Cubico.

Under the two trust deeds and the evidence adduced during the trial, there were individuals or groups of individuals who could have been found to have beneficial interest in the trust properties which were the subject of

---

ing and it was also came from the Spiritual.

"Q Then, really, these lots are not being held for the Moncado Foundation because Mr. and Mrs. Gilla are not members of the Moncado Foundation, am I right?

"A Yes, because the Gillas was—the Gillas were living there, so he's a member of the Spiritual Division ; and then when the Dr. Moncado die, that's the time when he separated.

"Q Who separated?

"A He was the one who separated from the Spiritual Division when Dr. Moncado died.

"Q Isn't it true that when Dr. Moncado died you formed the Moncado Foundation, am I right?

"A Yes, sir.

"Q And isn't it true that Mr. and Mrs. Gilla remained as members of the Filipino Federation of America, Spiritual Division, am I right?

"A Yes, sir.

"Q And as you testified yesterday, the Filipino Federation of America, Spiritual Division, was never dissolved?

"A It was not disorganized, but if the members want to go away, we cannot hold them.

"Q That's right. It isn't disorganized, but if the members of the Spiritual Division, Filipino Federation of America, goes to another organization of the Filipino Federation of America, you cannot hold them, am I right?

"A Yes, we cannot hold them.

"Q And the Gillas stayed with the Federation, Spiritual Division, am I right?

"A I think he stood with the Spiritual—I know what he understood is he belong to the Spiritual Division, but now he is away, I don't know what he think about now.

"Q So you don't know? You never investigated that?

"A No.

"Q There are other people in the same situation as the Gillas, am I right?

"A Yes, sir.

"Q There are many others in the same situation?

"A Yes."

the suit and who as above stated were not represented.

In order for the decree of the lower court to be binding upon such persons, they must be made parties to the suit, either as plaintiffs or defendants. *Estate of Grace,* 34 Haw. 25, 33; *Brown* v. *Kaahanui,* 29 Haw. 804, 808; *Smythe* v. *Takara,* 26 Haw. 69, 72; *Waterhouse* v. *Achi,* 24 Haw. 431, 435; *Rumsey* v. *New York Life Ins. Co.,* 23 Haw. 142, 146; *Magoon* v. *Afong,* 10 Haw. 340, 431; *Mc-Keague* v. *Neisser,* 6 Haw. 461, 462-63; *Kaopua* v. *Keeli-kolani,* 6 Haw. 123.

"This court cannot undertake to hear and determine questions affecting the interests of these absent persons unless they are made parties and have had an opportunity to come into court. * * *" *Magoon* v. *Afong, supra* at 341. *Brown* v. *Kaahanui, supra* at 811; *Smythe* v. *Takara, supra* at 72; *Charles Keeshin, Inc.* v. *Farmers & Merch. Bank of Rogers, supra* at 486-87.

At the conclusion of the trial, appellants moved to reopen the case for further evidence on the ground that plaintiff had discovered that defendants had tampered with entries made in Defendants Exhibit 56 in evidence on each of pages 51 through 56 inclusive thereof; that the heading of each of said pages originally read "House Lot 1 and 2," but said figures 1 and 2 were changed on each page to read "House Lots 38 and 44" and that the changes were material ones and made to mislead the court and plaintiff.

The trial court after a full hearing properly denied the motion to reopen the case. It found that there was an insufficient showing to require that the case be re-opened, and that Defendants Exhibit 56 in evidence did not affect the ultimate result. The matter of reopening was within the court's discretion. *Meheula* v. *Pioneer Mill Co.,* 17 Haw. 56; *Ahana* v. *Insurance Co. of North America,* 15 Haw. 636; *Herblay* v. *Norris,* 8 Haw. 335; *King*

v. *Heleliilii,* 5 Haw. 16. The record shows there was no abuse of discretion.

Appellant further urges as error the disallowance of attorney's fees. Appellant was not entitled to attorney's fees inasmuch as the proceeding was not for the benefit of the trust estate. "If any fee is allowable in this case it would be under the rule that those who perform services beneficial to a trust estate will be compensated therefor. * * * In the case at bar the services of the attorney for the settlor were in opposition to the interests of all the beneficiaries of the trust * * *." *Bishop Trust Co.* v. *Smart,* 39 Haw. 641, 651-52. See also *Hobbs* v. *McLean,* 117 U.S. 567; *Lewis* v. *Gaillard,* 70 Fla. 172, 69 So. 797; *Strout* v. *Strout,* 117 Me. 357, 104 Atl. 577.

In addition, in view of the modification of the decree. and judgment of the lower court by this court, as hereinafter stated, to the extent that the determination of the lower court as to the trust beneficiaries is vacated, it cannot be said that the litigation was in the best interest of the estate for it did not resolve the ambiguity as to the trust beneficiaries.

The first paragraph of the judgment wherein the lower court decreed "that the plaintiff have and recover nothing from the defendants by reason of this action, that said action be and the same is hereby dismissed on the merits and that the defendants recover of the plaintiff their costs in this action" is affirmed.

The second and third paragraphs of the judgment are vacated.

It was noted in the pre-trial order that Alfonzo Cubico claims he holds title to Lot 1 for the benefit of C. Ojatis, R. Ruelan, T. Langi, A. Cagas, P. Beroo, C. Cabarci, S. Ocampo, M. Clarabel, M. Recolan, P. Ricardo and defendant G. Ordista and Lot 2 for the benefit of N. Guevarra, A. Simella, S. Nones, L. Genegabuas, R. Patalinghog, C.

Billones, R. Crospero, R. Vesande, P. Mitante and C. Cedenio and that the other defendants, namely, Eleuterio Bulawan, Crisanto Bolilan, Alfonzo Nagal, Gregorio Ordista and Arcadio Amper claim they hold the title to the remainder of the lots for the benefit of the Moncado Foundation as the successor in interest of the Spiritual Division of the Filipino Federation of America, Incorporated, and the persons who are now members of the Moncado Foundation and formerly members of the Spiritual Division. This claim of the defendants as to beneficial interests was not in issue in the trial below for the reasons hereinabove noted. In a proper proceeding, the validity of the express trusts and the identity of beneficiaries of the trusts may be determined with all necessary parties before the court.

However, the contentions made by the defendants as hereinabove outlined should be incorporated in the modified decree. The modified decree and the registration thereof in the Office of the Assistant Registrar of the Land Court will indicate that the defendants, under their own judicial admissions, do hold the land as trustees inasmuch as the deeds under which the defendants now hold title do not indicate any trust. The modified decree will be without any prejudice to others who may claim the beneficial interest in whole or in part, whether on the theory of an express or resulting trust.

Cause remanded with instructions to enter a decree in conformity with this opinion.

*Shiro Kashiwa* for appellant.

*Herbert K. H. Lee* and *Michiro Watanabe* for appellees.