IN THE MATTER OF THE DETERMINATION AND
DECLARATION OF HEIRS OF HO CHANG SHEE,
ALSO KNOWN AS CHANG SHEE, DECEASED.

No. 4356.

December 1, 1964.

Tsukiyama, C. J., Cassidy, Wirtz, Lewis, JJ., and
Circuit Judge King, in Place of Mizuha, J.,
Disqualified.

OPINION OF THE COURT BY CIRCUIT JUDGE KING.

This is another facet of a family dispute part of which
has been before this court on another appeal. A very
clear and complete statement of the situation is set forth
in *Chun Ming* v. *Ho,* 45 Haw. 521, 371 P.2d 379 (1962).
In the decision of that case, mention was made of a peti-
tion for determination of the heirs of Chang Shee, Equity

No. 5664 in the First Circuit Court. This court also ordered that "matters which concern the Chang Shee estate are to be held in abeyance until determination of her heirs."

Equity No. 5664 commenced on June 18, 1952, as a petition for determination of the heirs of Chang Shee who died intestate on August 11, 1927. The petitioners are Kam Chin Chun Ming, Kam Hon Ho, Kam Yee Ting, Kam Man Ho, Kam Kong Ho, and Young Tim Ho, who alleged that they and Kam Hee Ho are the only surviving heirs at law of their mother, Chang Shee. These persons are referred to as "the seven."

On October 2, 1952, Kam Moon Kam, Kam Yin Eng, Kam Mee Char, Kwan Heen Ho, Kam Hou Wong, Kam Lo Ho, Kam Yip Chock, Kam Sung Dott, Hoon Cheong Mock, and Kam Chung Bertleman filed an answer admitting that "the seven" are children of Chang Shee but alleging that they also are surviving children and heirs at law of said Chang Shee. These respondents are referred to as "the ten."

"The seven" admit to the same status another child, Kam Yau Ho, who died on April 21, 1930, single and without children. "The ten" include as children of Chang Shee, Kam Yau Ho and two more children, Wah Leong Ho, who died on June 6, 1936, single and without children, and Wah Teong Ho, who died on May 21, 1933, single and without children. Chang Shee's widowed husband, Ho Poi, died on May 29, 1941.

Hearings were held beginning January 9, 1959, and ending April 20, 1959, on which date the judge took the matter under advisement and announced that no decision would be rendered until this court had acted on the then pending appeal in *Chun Ming* v. *Ho, supra*. That case was decided on May 2, 1962. Thereafter, the judge heard further argument, received further evidence, again took

the case under advisement, and on July 31, 1962, filed his decision, followed by a decree on August 10, 1962, finding that the heirs at law of Chang Shee at the time of her death were the 20 children mentioned above. There was a motion for a new trial which was denied on December 5, 1962, after which "the seven" filed this appeal.

One would have supposed that it would be a relatively simple matter to prove whether or not the same woman gave birth to 20 children between 1892 and 1917. The difficulty is that until the death of Ho Poi, the admitted father of all 20 children, there had been no issue raised that any of these children were not also the natural children of Chang Shee, Ho Poi's only lawful wife. Contrariwise, there had been positive sworn statements by Ho Poi, Chang Shee, and three of "the seven" that all 20 children were the children of Ho Poi and Chang Shee. After Ho Poi's death and in the petition for probate of his will filed by Kam Hee Ho, one of "the seven," only "the seven" were named as his heirs at law and next of kin. On August 11, 1941, two of "the ten" entered their appearance in the probate proceedings and set forth the claim of "the ten" to be also children and heirs at law of Ho Poi. This gave rise to the dispute.

"The seven" admit that Ho Poi is the father of "the ten" but deny that Chang Shee is their mother and claim that another woman, Chun Shee, is their mother. This is buttressed by birth certificates, a record book kept by Ho Poi, and the testimony of individuals who said Ho Poi had children by the two women.

Chun Shee was a woman who accompanied Ho Poi and his wife to Hawaii in 1891 when she was about 10 years of age and who remained in the same household until her death on January 23, 1919. Her status is ambiguous when viewed in the light of Western concepts for it is suggested by "the seven" that she was Ho Poi's "second wife" and

the mother of 12 of his children ("the ten" plus 2 deceased children).

The law and its presumptions have been fully developed where the identity of the mother is known but the identity of the father is controverted. See *Hopkins* v. *Chung Wa,* 4 Haw. 650; *Godfrey* v. *Rowland,* 16 Haw. 377; *Godfrey* v. *Rowland,* 17 Haw. 577; *McMillan* v. *Peters,* 30 Haw. 574. The reverse situation seems to have presented itself to the courts very infrequently.

*In Re Bennett's Estate,* 135 Misc. 486, 238 N.Y.S. 723, was a probate case involving the right of an alleged daughter of the decedent to administration as against the alleged widow. The principal point of the case was the validity of a divorce decree obtained by the decedent from the petitioning widow, but the relationship of the daughter was also questioned. The judge of the surrogate's court said on this latter issue:

"The further attack made in the instant petition on the relationship of Mrs. Anderson to the decedent is not worthy of serious consideration. All of the evidence adduced demonstrates that *the recognized relationship of parent and child existed between them, and under such circumstances the burden is upon the person denying the relationship to show by 'irrefragable proof' that it did not exist.* * * *" (At page 737, underscoring added.)

In view of the judge's decision that the decree of divorce was void and that therefore petitioner as the lawful widow was entitled to administration, the remarks concerning the legitimacy of the alleged daughter were unnecessary. However, it is interesting to note that the alleged daughter of decedent was not the daughter of the widow and that no mention is made in the decision of any other marriage of the decedent.

*Livernash* v. *De Lorme,* 208 Mich. 295, 175 N.W. 177, was an action of ejectment against the alleged daughter of a decedent by a claimant to the real property involved who would be entitled thereto if the defendant were not such daughter. The probate court had already determined the heirs of the decedent to be his eight brothers and sisters and not the alleged daughter. The issue of parentage in the ejectment action was submitted to a jury which found for the daughter. In affirming the judgment below the court said:

"It stands practically undisputed that Ethel lived from early infancy in the Darrow home with Harvey W. Darrow and wife in the relation of parents and child, treated and recognized by them in word and act as their daughter. In 29 Cyc. 1583, the relation of parent and child in general is thus stated:

" 'The term "parent and child" is used to indicate the relation existing between husband and wife, or either of them, on the one hand, and their legitimate offspring on the other. The existence of the relation is a question of fact, and is established prima facie where it is shown that the parties lived together, and recognized by their acts the existence of that relation.' " (At pages 180-181.)

*In Re Matthews' Estate,* 153 N.Y. 443, 47 N.E. 901, was an appeal from the decree of final settlement of the accounts of an executor which necessarily included a finding that the decedent's mother had had another legitimate daughter named Harriet. The children of a deceased brother of the decedent denied that Harriet was the legitimate child of decedent's mother. In affirming the judgment, the court of appeals said:

*"While the question of legitimacy has most frequently arisen while marriage was claimed or proved,*

*and the nonaccess of the husband or the validity of the marriage was at issue, still it is manifest that the presumption of legitimacy is not limited to cases involving those questions. It has a wider application, and applies to every case where the question is at issue.* It is based upon broad principles of natural justice and the supposed virtue of the mother. It is a branch of that general rule of equity and justice which assumes the innocence of a person until there is proof of actual guilt; and, *whenever it is not inconsistent with the facts proved, this presumption is controlling.* If a former marriage is necessary to sustain the presumption, it will be assumed until contrary proof is given. When, as in this case, there is evidence on the one side of mere reputation, which is casual, remote, and uncertain, and the presumption of legitimacy on the other, it becomes a question of fact, and the decision of the trial court must be treated as final and conclusive upon the parties. It is true that the precise question under consideration was not involved in some of the cases cited; yet the opinions of the learned judges and text writers, who have so fully recognized and plainly stated the presumption and grounds upon which it rests, are entitled to great weight, and should be regarded as controlling. The existence of such a presumption is in consonance with every correct sense of propriety and justice. Any other rule would be fraught with danger, and produce immeasurable uncertainty. Property rights would be rendered doubtful, and the fair frame of their ancestors might be destroyed, by the cupidity of remote heirs and next of kin. There might be others who would be willing to dishonor their ancestors and bastardize their relatives to increase their patrimony. In the absence of this presumption, the protection of property and character

would require proof of the marriage and legitimacy of ancestors, however remote, and in cases where it could not be obtained. To hold that this safeguard of the law does not exist would serve no good or proper purpose, and would overrule a beneficent principle of the law as it is now understood. *We have no hesitation in adhering to the principle that the law presumes legitimacy, and not illegitimacy; morality, and not immorality; social integrity, and not social dishonor; and in declaring such to be the law of this state. * * *"* (At page 903, underscoring added.)

*In Re Fink's Estate,* 343 Pa. 65, 21 A.2d 883, was an appeal from a decree settling the first and final account of a trustee and distributing estate. The decedent had been raised by a man and his wife as their own daughter. Later her parenthood was questioned. It appears that the lady who raised her may have had a child at about the time decedent was born but that this other child died soon after birth and somehow decedent was substituted. The appellate court held that no one of several claimants could establish a relationship with the decedent and therefore her property escheated to the District of Columbia for the benefit of the poor. In discussing the effect of presumptions, the court said:

"To say that the relationship is established 'prima facie' may mean either that enough has been shown to make a finding of the existence of the relationship permissible or it may mean that such finding is obligatory in the absence of other evidence. * * * It would seem that if the fact finding body believed the evidence of the proponents, the latter is the proper meaning here. *If it were shown that a child had been reared and recognized as the child of a married couple, that should be enough to raise a presumption that he was*

*in fact their child, even though no evidence were presented to prove his birth to them. * * ***

"It is not open to question that the burden of proving their kinship by a preponderance of evidence was upon the * * * claimants * * *. They sought to maintain this burden by showing the facts dealing with the relationship and relying largely upon what they treated as presumptions. However, the presumption itself is not evidence. * * * When the presumption relied upon had been rebutted by sufficient evidence, the presumption passed from the picture, though the facts or actual evidence from which the presumption arose remained, free from any artificial effect, to be considered along with the other evidence. * * * It cannot be doubted that when all the evidence was presented in this case the presumption had been sufficiently rebutted and that it became necessary to weigh the evidence on both sides for the purpose of ascertaining where the preponderance lay.

"In our opinion the lower court erred in setting up too exacting a standard for the evidence necessary to rebut the presumption raised by the evidence bearing on the status of Helen as part of the Fink family. We are unable to find any authority in our cases for the position that the quantity of proof required to rebut this presumption is the same as that which exists as to legitimacy. *The adjectives quoted by the court below, such as 'clear', 'direct', 'satisfactory', 'irrefragable', 'beyond a reasonable doubt', 'precise', and 'indubitable', are applicable to situations where the legitimacy of a child is in question.* There are many weighty reasons why a child born in lawful wedlock should be presumed to be legitimate that are not common to the relationship of parent and child. *It has become part of the substantial law of evidence in this*

*state that the proofs necessary to rebut a presumption of legitimacy must be of the highest order. * * *"* (At page 888-889, underscoring added.)

From these authorities we deduce that the relationship of parent and child is a fact to be proved by the person asserting the same, that the relationship is presumed to exist in fact where it is shown that the parties lived together and recognized by their acts the existence of the relationship, that this presumption may be rebutted, that where the legitimacy of the child is not involved and the presumption has been rebutted by sufficient evidence the trier of facts must weigh the evidence on both sides without considering the presumption, but that the evidence necessary to rebut the presumption is greater where the legitimacy of the child is in question and in such a case the presumption is controlling if it is not met by "irrefragable" proof.

There is much in the situation which tends to support the allegations of "the seven." Perhaps Ho Poi did father children by both his lawful wife, Chang Shee, and another woman, Chun Shee. However, if this is admitted, the parentage of all children born after Chun Shee became of child-bearing age becomes doubtful. There is then no overriding reason to assign any of these children to Chang Shee or Chun Shee. If it is held, as "the seven" maintain, that the sworn testimony of three of their number and of their mother and father and also the petitions for several certificates of Hawaiian birth were all part of a deliberate plan for the purpose of avoiding possible criminal action against Ho Poi, would not such a plan of deliberate falsification under oath also cast a cloud on the parentage of each of "the seven"? If Kam Kong Ho (one of "the seven") and Kam Hou Wong (one of "the ten") were actually born within 7 days of each other, as "the seven" contend but "the ten" deny, how does one

prove that either child must necessarily have been born of either mother?[1]

These considerations illuminate the desirability of applying a presumption in this case which places the burden upon "the seven" of showing by "irrefragable" proof that the relationship of mother and child did not exist between Chang Shee and each of "the ten." The judge below concluded that no such standard of proof was met. This court cannot now say that his conclusion is "clearly erroneous," even though we have reason to doubt the credibility of some of the testimony on the part of "the ten," as well as some of the testimony on the part of "the seven." H.R.C.P. Rule 52(a) ; *Peine* v. *Murphy,* 46 Haw. 233, 377 P.2d 708; *Filipino Fed. of America* v. *Cubico,* 46 Haw. 353, 380 P.2d 488.

Appellants assert that the trial court erred in not accepting Exhibit 15 (Ho Poi's notebook) as setting forth the true birthdays and maternity of Ho Poi's children. As the court noted, there is nothing in the exhibit identifying the mother of any particular child, and the birthdates set forth therein were not used in the family while those set up by "the ten" were the ones invariably used. Furthermore, although Exhibit 15 is purportedly mostly in Ho Poi's writing, in applying for certificates of Hawaiian birth for his children he himself gave the birthdates contended for by "the ten."

Appellants also assert that the trial court erred in refusing to admit Exhibit 14 for identification into evidence. This is a memorial tablet which identifies Chun

---

[1] The admission made in the answer of "the ten" that "the seven" were the children of Chang Shee was coupled with the proposition that they themselves were also the children of Chang Shee. When the answer is construed "to do substantial justice," as provided by H.R.C.P., Rule 8(f), it amounted to an assertion that all seventeen were the children of Chang Shee, "the ten" as well as "the seven." Thus there was no admission as to the parentage of "the seven" that could be used to refute the claim of "the ten" to equal status.

Shee as a "deceased mother." It does not identify her children and was prepared by the wife of one of "the seven" after the death of Ho Poi on May 29, 1941. It is noted that litigation over the issue of parentage commenced with the petition for probate of Ho Poi's will filed on June 27, 1941. These considerations reduce the probative value of the exhibit. However, the error, if any, in excluding the exhibit was not prejudicial since we reach the same result even if it be assumed that Ho Poi did father children by both Chang Shee and Chun Shee.

Appellants further assert that the trial court erred in holding that Cooke Trust Company, Limited, administrator with the will annexed of the estate of Ho Poi, deceased, was a proper party to these proceedings. We see no merit in this specification of error. Cooke Trust Company, Limited, took no part in the trial below or in the appeal in this court. Its only interest is in the real property described in the petition, for the protection of which it has remained in the case inasmuch as its predecessor executor had listed the same real property among the assets of Ho Poi. It need hardly be added that this opinion does not attempt to decide in whose estate the real property in question is properly inventoried.

The remaining specifications of error do not present any new points for consideration.

For the reasons given, the decree of the trial court is affirmed.

*Leon L. M. Chun* and *W. Y. Char* for Appellants.

*Earl S. Robinson* (*Fong, Miho, Choy & Robinson*) for Respondents-Appellees.